Standard Brands, Inc., Appellant, *v.* Pittsburgh.
Standard Brands, Inc., Appellant, *v.* Pittsburgh
School District.

Argued March 15, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

re-argument refused June 5, 1961.

*Judd N. Poffinberger, Jr.*, with him *Maurice B. Cohill, Jr.*, and *Kirkpatrick, Pomeroy, Lockhart & Johnson*, for appellant.

*Regis C. Nairn*, Assistant City Solicitor, with him *David Stahl*, City Solicitor, for City of Pittsburgh, appellee.

*Edmund W. Ridall, Jr.*, Assistant School Solicitor, and *Niles Anderson*, School Solicitor, for School District of Pittsburgh, appellee.

OPINION BY MR. JUSTICE BOK, May 2, 1961:

There are two appeals by Standard Brands, Inc., a taxpayer, against the imposition of the mercantile license tax (1) by the City of Pittsburgh under the Act of June 25, 1947, P. L. 1145, as amended, 53 PS §6851 et seq, and (2) by the School District of Pittsburgh under the Act of June 20, 1947, P. L. 745, as amended, 24 PS §582.1 et seq. The case involves sales under cer-

tain conditions by the Grocery and Fleischmann (baking) Divisions of the taxpayer during the years 1952 through 1956. The company deals in all sorts of packaged foods. The company paid much of the tax without dispute but $19,205.32 of it was paid under protest, this amount representing the tax on certain contested sales. The amount claimed by the two taxing bodies as additional tax is $21,467.12. Having been assessed for this deficiency the company filed appeals in the County Court of Allegheny County, which dismissed them. The taxpayer then appealed to us.

Appellant is a Delaware corporation with head office in New York, is authorized to trade in Pennsylvania, and does a national business.

The Fleischmann, or baking, area of the case can be disposed of briefly. The company has a "Pittsburgh Sales Territory", which is part of its Cincinnati District, and keeps a Pittsburgh office with a manager, three sales representatives, six driver-salesmen, and others. It also has a warehouse in Pittsburgh, and trucks, whose drivers go about and make sales direct from them, although some orders come to the office by mail or telephone. Sales are made on the spot and billed from Cincinnati. The company admits that sales so made to customers in Pittsburgh are taxable but resists the tax on those where the customer lives beyond the city limits.

What we are dealing with is a "vendor or dealer in goods, wares, and merchandise." *Albright & Friel, Inc. v. Philadelphia School District,* 187 Pa. Superior Ct. 387 (1958), 144 A. 2d 745, allocatur refused, is square authority for the tax. The Superior Court remarked: "All of the services performed outside of Philadelphia are directed from the Philadelphia office." So here, in Pittsburgh. Both the impetus and the closing of the sales occurred in the Pittsburgh office. In *General Foods Corp. v. Pittsburgh,* 383 Pa. 244 (1955), 118 A.

2d 572, we said: ". . . the sales are effected when the customers' orders are accepted by plaintiff, and that occurs through the agency of its district managers. . . . When the district office, after receiving an order, which is an offer to purchase, gives instructions to the plant or distribution center to make shipment to the customer, that action constitutes the acceptance of the order and the consummation of the sale."

The disputed sales in the baking division were properly taxed.

The situation in the grocery division is factually different. There was no warehouse for these items in Pittsburgh. There was an office in the city occupied by the district manager and his staff. A force of salesmen worked from their homes and took orders from customers both inside and outside of Pittsburgh; as for those living outside of Pittsburgh only sales to those living in the Commonwealth are involved in this case.

When a salesman makes a sale he sends copies of the order to the Pittsburgh office for the statistical record, to the New York office, and to one of the company's warehouses. These copies are routed through an order-control unit, to determine whether the goods ordered are available, and to a traffic department to determine the routing of delivery. The New York office requires 48 hours in which to decide whether the customer's credit is adequate. The copy of the order sent to the Pittsburgh office plays no part, except statistically, in the dynamics of an order. Customers remit to the New York office. Orders coming to the office by mail or telephone are processed in the same way.

The company again admits that sales made to Pittsburgh residents are taxable but takes issue with regard to those made to residents of other Commonwealth counties in the district. In short, the admission is that the company's salesmen have a sufficient connection

with the district office to justify the conclusion that sales made by them to Pittsburghers are effected and consummated in Pittsburgh. We are of opinion that the effectuation and consummation are equally operative when the customer lives beyond the city line.

It is necessary, in order to sustain such a tax, that the activities of the subject company be more than mere solicitation. There must be other activities: *Lutz v. Foster & Kester Co.*, 367 Pa. 125 (1951), 79 A. 2d 222; *Motch & Merryweather Co. v. Pittsburgh School District*, 381 Pa. 619 (1955), 116 A. 2d 733.

We think that there is evidence of more than mere solicitation. There is no dispute that two of the company's customers regularly telephoned their orders to the office, one in the amount of five per cent of its needs, the other 100%. There is testimony that 25% to 30% of the office business was mailed in and the manager would in turn mail the order to one of the warehouse points. Juron, the district manager, described his job in these words: "A. Well, actually my function is, you might say, administrative supervision of sales programs as such, making analyses of the market trends of the business, to make recommendations as to what needs to be done to keep the pattern and the progress of the company's business going ahead. Actually, you might say that it is a supervisory capacity over the operations of the sales of the products, the management of the market."

It must be remembered that the test in this class of case is not whether the company is "doing business", within the artful meaning of those words, but, more narrowly, whether the company is a "vendor or dealer": *General Foods Corp. v. Pittsburgh,* supra (383 Pa. 244). And the activities of the office is the source at which to look for the answer. It is not necessary that every step of a transaction take place within the tax-

ing district: *Glendale Heights Ownership Association v. Glenolden School District,* 393 Pa. 485 (1958), 143 A. 2d 386.

We believe that a sale is "effected" when a salesman or the district office receives an order and instructs a distribution center to ship goods to the customer. According to the evidence the shipment goes forward unless the New York office objects on grounds of credit, and in some cases where the shipping point knows that the order is within a customer's credit limit, shipment is made without reference to approval from New York. Instructions by the Pittsburgh personnel to ship form the crucial step in the transaction that localizes it in Pittsburgh rather than in New York or at the locus of shipment.

Hence we regard the taxpayer's sales now under scrutiny as taxable.

The orders of the court below are affirmed at the cost of appellant.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES dissent.