Edward Russell **HILTON**, Plaintiff,

v.

**W. T. GRANT COMPANY**, a corporation, et al., Defendants.

Civ. A. No. 61–579.

United States District Court
W. D. Pennsylvania.

Dec. 31, 1962.

Smith & Zehner, Pittsburgh, Pa., for plaintiff.

Meyer, Darragh, Buckler & Bebenek, Pittsburgh, Pa., for American Ladder Co. and W. T. Grant.

Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendant Underwriters Labs, Inc.

DUMBAULD, District Judge.

Stimulated by perusal of Swindell-Dressler Corp. v. Dumbauld, 308 F.2d 267 (C.A. 3, 1962), plaintiff has filed, on October 12, 1962, a motion to vacate this Court's order of November 22, 1961, granting a motion to dismiss with respect to one defendant (the New York manufacturer of the aluminum ladder purchased by plaintiff in Pennsylvania from defendant W. T. Grant Company and the alleged defects in which are claimed to have caused injury to plaintiff). The action remains pending with respect to defendant W. T. Grant Company and another defendant, Underwriters Laboratories, Inc. which is said to have tested and approved the allegedly defective article.

Unfortunately for plaintiff's position, the only thing in common between the Swindell-Dressler case and the case at bar is that both cases involve orders made by the writer of this opinion during the first period when he sat as Judge in charge of miscellaneous matters. [For a recent comment by Justice Musmanno as to the nature of "miscellaneous" matters, see Smith v. Gallagher, 408 Pa. 551, 558, 185 A.2d 135 (1962)]. The philosophy and policy of designating a member of the Court each month in rotation to handle such matters is that thereby the judges actively engaged in the trial of cases will not be deflected or diverted therefrom by reason of such miscellaneous

business. Unfortunately during the above referred to period of service the theory did not work out as contemplated because at the same time that the writer of this opinion was serving in the capacity of "miscellaneous Judge" he was also actually engaged in the trial of a "protracted case" which was in itself a full time job. See Getty Oil Co. v. Mills, 204 F.Supp. 179 (W.D.Pa.1962). Consequently the accumulated miscellaneous matters had to be disposed of in summary fashion.

It has been said that the chief virtue of a trial judge is decisiveness and promptness in disposing of pending cases. This quality is more important than the correctness of the determinations arrived at (although of course one does one's best to be right to the extent that experience, judgment, and available opportunities for research permit) since it is the primary function of the appellate courts to maintain the correctness of judicial output, and they have at hand the facilities for doing so.

Of course what has been so often emphasized, especially by Mr. Justice Frankfurter, regarding the desirability of curtailing the time spent on routine business so that the courts can deal more adequately with the difficult cases that require abundant reflection, discussion, and study, does apply to some extent to trial courts as well as to appellate courts. Ex parte Republic Peru, 318 U.S. 578, 602–603, 63 S.Ct. 793, 87 L.Ed. 1014 (1943) ; Ferguson v. Moore McCormack Lines, 352 U.S. 521, 546–548, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957) ; Dick v. N. Y. Life Ins. Co., 359 U.S. 437, 458–459, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959). Hence if promptness of disposition should characterize all activities of a trial judge, it should be manifested a fortiori in handling "miscellaneous matters".

It does not follow, however, that every decision made during the period of *Sturm und Drang* above referred to was *per se* arbitrary, erroneous, or unconstitutional. So far as is now known, Swindell-Dressler is the only instance of action so drastic as to fall into that category.

In Swindell-Dressler we undertook the impossible feat of consolidating a case pending in this District with one pending in another District, and of transferring it upon a bare *inspeximus* of the record, to that District for trial.

In the case at bar the Court did not act *ex mero motu suo,* but upon a duly filed motion to dismiss. The action was pending in this jurisdiction and granting the motion did not involve any nullity by reason of extraterritorial exertion of power.

■ Likewise with respect to the procedural due process point there is no similarity between the cases. In the case at bar the parties had and utilized ample opportunity to present their contentions for and against the motion. They were accorded due process of law. It is true that this Court's order of October 31, 1961, called for briefs rather than oral argument. But oral argument is not required in order to constitute due process. F. C. C. v. WJR, 337 U.S. 265, 275–276, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949). Rule 78 F.R.C.P. specifically provides that to expedite judicial business an order such as that of October 31, 1961, may be made "for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition." The practice of dispensing with oral arguments on motions except in complicated cases is recommended by eminent authorities. See Proceedings of the Seminar on Procedures for Effective Judicial Administration, 29 F.R.D. 191, 301.

Pursuant to the order of October 31, 1961, plaintiff and defendants did file briefs, which were received by the Court on November 20, 1961. These briefs have been ordered to be filed as part of the record, in order to show the materials upon which the Court was entitled to rely and did rely in making the order of November 22, 1961. They will be discussed in connection with our re-examination of the merits of the case.

There is therefore nothing to plaintiff's due process point. However, although due process does not require oral argument,

we are personally strong believers in its value. We agree with what is said in Wiener, Briefing and Arguing Federal Appeals, § 91, pp. 277–280 (1961). Lord Coke said that in the course of oral argument the Holy Spirit illumines the mind of the court. Doubtless the lawyer's conception of heaven would be an opportunity to hear perpetual argument by the luminaries of the profession, such as a contest between George Wharton Pepper and John W. Davis presented before a court composed of Lord Coke, John Marshall, James Wilson, Charles Evans Hughes, Oliver Wendell Holmes, Owen J. Roberts, Benjamin N. Cardozo, Robert H. Jackson, and Learned Hand.

Not being subject when the motion to vacate was made to the pressures which forbade oral argument when the original order of November 22, 1961, was made, we have had the benefit of copious oral argument and a 24-page brief by plaintiff in support of the motion to vacate. We have therefore entered into a complete re-examination of the issues involved in that order. We shall discuss the facts in chronological order.

Plaintiff's complaint was filed on September 29, 1961. On the same day an order was procured for service upon defendant American Ladder Corp., a New York corporation, by service upon the Secretary of the Commonwealth in accordance with the provisions of 15 P.S. § 2852–1011(B).

■ At argument plaintiff contended that the allegations of the motion for such service should have been accepted by the Court rather than the allegations of the complaint when considering the motion to dismiss. However, it is plain that the procurement of an order of court for service upon the Secretary of the Commonwealth is simply a step required by the Pennsylvania statute in order to effect service under said statute. Rule 4(d) (7) FRCP adopts the State practice. The statute requires the court to make such an order ministerially, upon the presentation of a petition alleging conduct of business within the Commonwealth by a corporation not qualified to do business within the Commonwealth. The Court is not required or authorized by the statute to make any determination with respect to the truthfulness of the allegations of the petition. Nor did Judge Gourley do so in his order of September 29, 1961, directing that service be made in the mode prescribed by the Pennsylvania statute.

Accordingly it is clear that this petition and order became *functus officio* as soon as service was made pursuant to the terms thereof. Nothing contained in the petition or order was binding upon the Court when dealing with the motion to dismiss any more than would be the similar recitals in a Marshal's or Sheriff's return. Such *prima facie* recitals are not conclusive when an issue is actually raised and presented for judicial determination by the motion to dismiss.

Service upon the other two defendants was effected by the Marshal in the usual manner at their places of business within the District.

■ On October 19, 1961, defendant American Ladder Corp. filed its motion to dismiss, contending *inter alia* that "Plaintiff's cause of action as alleged did not arise out of any acts or omissions of the American Ladder Corp. in the Commonwealth of Pennsylvania" and that accordingly "the Court has not acquired or secured jurisdiction over the person of the defendant, American Ladder Corp.".

The Pennsylvania statute authorizing acceptance of service of process by the Secretary of the Commonwealth clearly states that such acceptance is confined to "service of process in any action arising out of acts or omissions of such corporation within this Commonwealth."

That the test specified in the quoted words must be met in order to acquire jurisdiction over a foreign corporation pursuant to the provisions of 1011, subd. B is made plain by the recent case of Rufo v. Bastian-Blessing Co., 405 Pa. 12, 18–20, 173 A.2d 123 (1961), superseding the conjectural interpretation enunciated in Florio v. Powder Power Tool Corp., 248 F.2d 367 (C.A. 3, 1957).

While as a matter of federal due process the Commonwealth perhaps need not have imposed the limitations contained in the quoted language [see Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 444, 72 S.Ct. 413, 96 L.Ed. 485 (1952); International Shoe Co. v. Washington, 326 U.S. 310, 317–319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)], the Pennsylvania Supreme Court has made clear that in the statute here involved the Pennsylvania legislature did not choose to exercise to the fullest extent the powers that it might have constitutionally exerted without violation of the federal due process clause. 405 Pa. at 21–22.

Accordingly the Court by order of October 31, 1961, directed the parties to submit briefs with respect to the question whether dismissal of defendant American Ladder Corp. was required under the Rufo case.

■ At the same time said defendant was relieved of answering interrogatories filed by plaintiff on October 26, 1961, pending disposition of the motion to dismiss.

This action was proper inasmuch as the duty of responding to interrogatories is an incident to the status of being a party to litigation. Therefore if there is reason to believe that there is a probability that said corporation may not be a proper defendant and that the action may be dismissed with respect to said corporation, it would be unreasonable to require it to undergo the burden of answering interrogatories until its status as defendant is determined.

While it is true that in the classic phrase of Lord Hardwicke "the public has a right to every man's evidence" [See United States v. Monia, 317 U.S. 424, 432, 63 S.Ct. 409, 87 L.Ed. 376 (1943)], and that the day may come when everyone is subject to the burden of answering interrogatories, whether a party to litigation or not, yet that day has not yet come. The present rules limit the obligation to parties to the litigation. Rule 33 FRCP.

It is also true that, just as taxation is one of the inescapable burdens of life in a civilized society [Holmes in Compania Gen. de Tabacos v. Collector, 275 U.S. 87, 100, 48 S.Ct. 100, 72 L.Ed. 177 (1927)], so is the necessity of defending unmeritorious litigation. Myers v. Bethlehem Corp., 303 U.S. 41, 51–52, 58 S.Ct. 459, 82 L.Ed. 638 (1938); Poulos v. N. H., 345 U.S. 395, 409, 73 S.Ct. 760, 97 L.Ed. 1105 (1953); Barr v. Matteo, 360 U.S. 564, 589, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Dow v. Johnson, 10 Otto 158, 193, 25 L.Ed. 632 (1879). No method has yet been devised for escaping this burden; but the burdens incident to the status of a defendant ought not to be augmented until it is certain that the party involved really is properly a defendant.

In considering the motion to dismiss, the Court had before it an uncontradicted affidavit by the President of American Ladder Corp. stating *inter alia:*

"that said corporation has no servants, agents or employees, nor property located in the Commonwealth of Pennsylvania; that at the time of the events complained of by the plaintiff in his Complaint and at all times prior thereto, the American Ladder Corp. was not doing business in the Commonwealth of Pennsylvania; that all sales of ladders by American Ladder Corp. to W. T. Grant Company take place out of the State of Pennsylvania; nor were there any acts or omissions on the part of American Ladder Corp. in Pennsylvania which in any way gave rise to the action brought by the plaintiff."

If there had actually been any transaction of sale or other dealings between plaintiff and American Ladder Corp. in Pennsylvania, plaintiff would undoubtedly have recited them in a counter-affidavit so stating, even if he had neglected to allege them in the complaint. The same is true of any physically affixed warranty, such as those discussed in the case of Silverman v. Samuel Mallinger

Co., 375 Pa. 422, 425–429, 100 A.2d 715 (1953), cited in plaintiff's brief filed in response to the Court's order of October 31, 1961.

Moreover, plaintiff at unnumbered page 5 of said brief conceded that the crux of the Rufo case was its holding that in that case "there was no sale to which the manufacturer was a party within the Commonwealth of Pennsylvania", and hence no jurisdiction under 1011, subd. B.

▆ The same is obviously true of the case at bar. Plaintiff is simply in the position of any retail purchaser buying an article that was manufactured and sold outside the State to a jobber, wholesaler, or distributor. Plaintiff had no dealings whatever in Pennsylvania with the Ladder company, out of which his cause of action arose. Plaintiff's attempts to inject questions about advertisements or warranties are nothing but afterthought, makeweight, and subterfuge. Obviously the charge of negligent design or manufacture relates to actions done elsewhere than in Pennsylvania. Rufo obviously is controlling. See also Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).

Moreover, even if plaintiff had paid for or reimbursed a retailer for advertisements in Pennsylvania, that would not have been an act giving rise to plaintiff's cause of action. The distribution of advertising material is something quite different from engaging in transactions of sale of the article advertised. In Jenkins v. Dell Publishing Co., 130 F.Supp. 104, 106 (W.D.Pa.1955), the distribution of publicity material was itself the tort complained of. The action was for invasion of privacy, akin to libel. The publication and circulation of publicity material containing an alleged libel or unwarranted invasion of privacy would of course meet the test of 1011, subd. B. As the Court said, "the injury claimed, if existent, is closely connected with the activities of these [defendant's] agents". Moreover, in that case defendant main-

tained eight full time solicitors in Pennsylvania. The Dell case does not help plaintiff in the case at bar.

Accordingly the Court on November 22, 1961, made the following order, vacation of which plaintiff now seeks:

"AND NOW, to wit, this 22nd day of November, 1961, upon consideration, it appearing that this action is one based upon diversity jurisdiction governed by the law of Pennsylvania, and that Pennsylvania law as recently enunicated in Rufo v. The Bastian-Blessing Company, 405 Pa. 12, 173 A.2d 123, decided July 17, 1961, requires the dismissal of this action as against the defendant, American Ladder Corporation, by reason of the fact that no acts or omissions of said defendant within Pennsylvania have been alleged so as to give this Court jurisdiction over said defendant, the complaint merely alleging in general terms the sale of certain ladders by said defendant to defendant, W. T. Grant Company 'for distribution in and about Allegheny County, Pennsylvania' and there being no specific allegations of agency or other circumstances which would put the plaintiff on any other footing or different status from that of any retail customer who buys an article in Pennsylvania from a retailer who has bought it from a manufacturer who produced and sold it in another state, and the Court being fully advised in the premises, and having requested, received, read, and reflected upon briefs from the parties upon this point and being clearly convinced of the correctness of its conclusion, so that no useful purpose would be served by oral argument unless, in the apt words of Chief Judge Stephen S. Chandler of the Western District of Oklahoma 'It is considered that a lawyer has the absolute right to argue a case at length when the judge fully understands the matter and knows he is

wasting time or unless it is considered that a lawsuit is something other than a sacred proceeding for the immediate determination of the true facts in which endeavor both counsel and the judge have equal obligation to facilitate and expedite', and oral argument being discretionary with the Court and not required by due process, and the Court in the exercise of its discretion concluding that oral argument in the instant matter is not necessary or advisable, however much the Court personally would derive intellectual pleasure and diversion therefrom, if it were not that this is a Court in a congested metropolitan center with a crowded docket of over 1000 cases awaiting trial, so that the application of judicial manpower to more doubtful and difficult matters is an urgent necessity.

"NOW THEREFORE IT IS ORDERED that the objections of said defendant filed heretofore on October 31, 1961, to plaintiff's interrogatories be and the same are sustained; and said defendant's motion to dismiss as to said defendant heretofore filed on October 19, 1961, be and the same hereby is granted, and the said action is dismissed with respect to said defendant, American Ladder Corporation."

All that is said in this order is correct. No acts or omissions in Pennsylvania giving rise to the plaintiff's cause of action are alleged.

All that is alleged is a sale by defendant Ladder Corp. to W. T. Grant Co. "for distribution in and about Allegheny County, Pennsylvania" [Par. THIRD A of Complaint]. Manifestly this means distribution by the Grant Co. in the normal course of retail sales. See 375 Pa. at 425, 100 A.2d 425.

There is also an allegation that the ladder "had been designed, manufactured and distributed by American Ladder Corp. * * * acting through its officers, agents, servants and employees". [Par. SIXTH]. It is not said that such action by said defendant was in Pennsylvania. The same is true of paragraph NINTH.

It is nowhere alleged that the Grant Co. was the Ladder company's agent. Companies desiring the benefits of retail price-fixing to avoid the Antitrust Laws often make such agency agreements, though it of course means that the manufacturer is subject to suit by reason of the agent's acts. United States v. General Electric Co., 272 U.S. 476, 484, 47 S.Ct. 192, 71 L.Ed. 362 (1926). But there is no such allegation of agency here.

Moreover the specifications of negligence against the Ladder company in the complaint show that defective design and manufacture were relied on. Such acts of negligence obviously, just as in the Rufo case, were not performed in Pennsylvania.

After the Court's order of November 22, 1961, had been made, there came to the attention and knowledge of the Court a purported amendment to the complaint, filed November 21, 1961, undertaking to allege an express warranty.

These were ordered "stricken off as untimely filed" by order dated November 22, 1961, and stamped as filed on November 27, 1961.

The amendment was out of time for two reasons: first, it came after the Court had ruled upon the motion to dismiss; second, it was not consented to nor had leave of court been obtained as required by Rule 15(a) F.R.C.P.

The same order likewise for the same reason struck off additional interrogatories filed by plaintiff on November 21, 1961.

A motion to reconsider the order of November 22, 1961, filed by plaintiff on November 22, 1961, was denied by order of November 27, 1961, for the reason that the Court found no merit in

it, having just decided the case adversely to plaintiff.

The same order of November 27, 1961, also denied a motion for reargument before a three-judge court filed on November 22, 1961, for the reason that no such procedure is known to the Rules or practice of this Court; nor was the occasion one for convening a statutory three-judge court under statutory provisions such as 28 U.S.C.A. §§ 2281, 2284, 2325.

■ Moreover, it appears from the file that an appeal from this Court's order of November 22, 1961, was taken on November 29, 1961, but was dismissed as premature by the Court of Appeals on April 26, 1962. This Court's order of November 22, 1961, therefore now remains in force as the law of the case. United States v. Davis, 3 F.Supp. 97, 98–99 (S.D.N.Y.1933).

■ Finally, if it should ever be established that this Court's order of November 22, 1961, was in any respect erroneous, such error will be harmless, inasmuch as the effect thereof will then have been merely to direct a separate trial of the claim against one of several defendants, as authorized by Rule 42(b) F.R.C.P.

Accordingly, after careful re-examination of plaintiff's contentions we remain fully convinced that they are entirely unmeritorious and that this Court's order of November 22, 1961, was and is correct, and should not be vacated.

## ORDER

AND NOW, to wit, this 31st day of December, 1962, after argument, IT IS ORDERED that plaintiff's motion, filed October 12, 1962, to vacate this Court's order of November 22, 1961, granting motion to dismiss as to defendant American Ladder Corp., be and the same hereby is denied and dismissed; and that the said order of November 22, 1961, shall stand and remain in full force and effect as the considered judgment of the Court and as the law of the case.